TOWNSHEND *v.* THOMSON *et al.*

(*Superior Court of New York City, General Term.* May 2, 1892.)

1. ASSIGNEE IN BANKRUPTCY—DIVESTITURE OF TITLE—EFFECT OF FORECLOSURE.

P., plaintiff's and defendants' common source of title, conveyed to S. in 1835, taking a purchase-money mortgage, and S. conveyed to W. W. was adjudged a bankrupt in 1843, and the premises passed to his assignee. P. foreclosed his mortgage in 1845, without making W. and the assignee parties, purchasing the premises himself. P. died in 1855, and in 1858 his representatives filed a bill against W.'s representatives, and against the assignee in his individual capacity, to quiet title by foreclosing the purchase-money mortgage as against them. Foreclosure was had, and the premises were purchased by C., who had acquired the interests of all P.'s heirs at law. *Held* that, the assignee not having appeared in the action in his representative capacity, the foreclosure and sale did not divest his title.

2. SAME—EFFECT OF PRIOR SALE.

In such case plaintiff claimed under a conveyance from the assignee to L., made in 1869. Defendants claimed under mesne conveyances from C. In 1845 the assignee sold the premises at auction to a person who conveyed all of his interest to P., the original owner. *Held*, that by the sale in 1845 the assignee had divested himself of all interest in the property, so that the second sale, under which plaintiff claimed, was void.

3. SAME—EFFECT OF DISCHARGE.

Besides, W., the bankrupt, having been discharged in 1843, and no debts having been proven against his estate after that time prior to 1869, unless, perhaps, one, which was barred by the statute of limitation, the interest of the assignee had reverted to the bankrupt and his heirs, and the conveyance by the assignee in 1869 was also for that reason void.

4. ADVERSE POSSESSION—EVIDENCE.

Plaintiff offered evidence that she had repaired the curb and gutter stones in front of the premises, and leased the same in 1883 to one who occupied the premises for about four years, and then retired therefrom peaceably, disclaiming any right to hold as against defendants. The lease was not recorded, and it did not appear that defendants ever had notice of it. *Held* insufficient to support plaintiff's claim of title by adverse possession.

5. EJECTMENT—EQUITABLE RELIEF.

Defendants, claiming under P., by mesne conveyances, were subrogated to his rights, both as purchase-money mortgagee and purchaser at the foreclosure sale under such mortgage; so that plaintiff's remedy against defendants was in equity, and not by action of ejectment.

Appeal from jury term.

Action of ejectment by Mary N. Townshend against Ellen L. Thomson and others, defendants. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before SEDGWICK, C. J., and FREEDMAN and McADAM, JJ.
*John Townshend*, for appellant.    *Foster & Thomson*, for respondents.

FREEDMAN, J.    This is an appeal by the plaintiff from a judgment entered
upon the dismissal of the complaint at the trial.    The action is brought by
the plaintiff upon the claim that on June 1, 1887, she was seised of an estate
in fee, and was lawfully in possession of the premises in suit, consisting of a
lot on the southwest corner of 117th street and Eighth avenue, in the city of
New York, and that while plaintiff was in such lawful possession on that
day the defendants unlawfully entered upon the premises, and ejected the
plaintiff therefrom, and have ever since withheld possession from the plain-
tiff; wherefore plaintiff demands judgment that she recover possession, etc.
The answer admits that the defendants at the time alleged were and still are
in possession, and that they withheld and do withhold possession from plain-
tiff, and alleges that the defendants have been and are lawfully in possession,
and denies the other allegations of the complaint.    Upon the trial before a
judge of this court and a jury, the substantial facts proved were as follows:
The premises in question, with other property, were owned in 1835 by one
Edward Price.    His title is admitted by both parties to have been good.    He
became seised of the premises in 1827.    In 1835 Edward Price conveyed the
premises by deed to John Scudder, taking from Scudder a purchase-money
mortgage thereon.    In 1838 John Scudder conveyed to Ebenezer L. Williams.
In 1843 Ebenezer L. Williams, while the owner of the premises, was adju-
dicated a bankrupt upon his own petition, under the act of 1841, and William
C. H. Waddell was duly appointed his assignee.    In 1845 a bill was filed by
Edward Price to foreclose the purchase-money mortgage made by Scudder,
and in 1846 a decree of foreclosure and sale was entered, the premises sold,
and conveyed by deed of the master in chancery to Edward Price.    But
neither Williams nor Waddell was made a party to the foreclosure.    In 1855
Edward Price died intestate, leaving him surviving, as his only children and
heirs at law, Artemas M. Price, Edward H. Price, James C. Price, Andrew
J. Price, Julia Ann Coulter, and Sarah M. Coddington.    In February, 1858,
Artemas M. Price and Caroline, his wife, filed a bill against the other chil-
dren and heirs at law of Edward Price for a partition of the premises in
question, with others.    Decree was entered, and the premises sold, but no con-
veyance was made.    In December, 1858, for the purpose, as may be assumed,
of clearing the record title, and foreclosing the rights of Williams' assignee
and the dower rights of Williams' wife, a bill was filed by William Coulter,
as administrator of Edward Price, against Rhoda Williams and William C.
H. Waddell, alleging the execution of the mortgage, that Waddell had become
seised of the interest of Scudder in the premises, the previous foreclosure suit
of Price against Scudder, and asking for a decree of foreclosure and sale.
Waddell appeared in the action, and, on the consent in writing of his attor-
ney, a decree of foreclosure and sale was entered, and the premises were sold
thereunder, and bought by Julia Ann Coulter, and conveyed to her by the
referee by deed dated January 28, 1859.    But this foreclosure and sale were not
effectual for the purpose of divesting the title of Waddell as assignee of Wil-
liams, if any was left in him, because the suit had proceeded against him in-
dividually, and not in his representative character as assignee, and he had
not appeared therein in his representative character.    This has been decided
in *Landon* v. *Townshend*, 112 N. Y. 93, 19 N. E. Rep. 424.    Julia Ann
Coulter, by various conveyances, acquired all the interest of all the other
heirs at law of Edward Price, and thereafter, viz., in April, 1863, she and her
husband conveyed the premises in question to Timothy Donovan.    In May,
1863, Donovan conveyed to Adams.    In 1864 Adams conveyed to Whitbeck.
In 1867 Whitbeck conveyed to Andrew.    In 1868 Andrew and wife conveyed
to William Thomson by deed dated March 9, 1868.    William Thomson died,

seised of the premises in question, January 13, 1872, leaving, him surviving, his widow, Ellen L. Thomson, and John W. Thomson, William A. Thomson, and Ernest A. Thomson, his only children, who are defendants in this action, and who, upon the death of William Thomson, became, and still are, seised of all the right, title, and interest in the premises which the said William Thomson had in his lifetime. William Thomson paid all the taxes and assessments imposed upon the premises from the time of his purchase until his death, and his executors and the defendants have paid all taxes since that time. When the premises were sold and conveyed to Edward Price in 1846, under the decree of foreclosure and sale in *Price* v. *Scudder*, Price at once took possession under the master's deed, and maintained his possession continuously down to his death, in 1855, and his heirs and their grantees have continued in possession from that time down to the present, unless the proof offered by the plaintiff established the contrary. The burden was upon the plaintiff to prove the allegations of her complaint, and she can recover only on the strength of her own title or of her own right to immediate possession.

The title claimed by the plaintiff rests (1) upon an instrument in the form of a conveyance by William C. H. Waddell, as assignee of Williams, to George Law, executed March 1, 1869; and (2) upon an instrument in the form of a quitclaim deed, executed by Law to the plaintiff in this action, January 10, 1873. Of these two instruments, that executed by Law was, under the evidence in the case, absolutely void, under the statute, as against the defendants, because given while the property was in the possession of a person claiming under a title adverse to that of the grantor. Moreover, Waddell, as assignee, had no title or estate left in 1869 which he could convey, and no order of the court authorizing or directing him to convey could invest him with a title or an estate, if he had none. He had divested himself of all title and estate he ever had 23 years before the attempted conveyance to Law. On February 8, 1845, he filed a report, as assignee, in which he reported that certain assets of Williams, among which the premises in question and some adjoining property, which may be styled the "Landon Property," were enumerated, were, "in his opinion, of uncertain value, and ought to be disposed of at once, without incurring further expense or delay respecting them." In due course of proceedings the premises in suit, including the Landon property, were thereafter sold by him, as assignee, at auction, March 23, 1846, for a small sum; and in his account of the assets and sales of property of Williams, which is in the custody of plaintiff's attorney, the assignee charges himself with the amount, as received, on the sale of this property. There is a very great probability that the person who purchased at this sale subsequently conveyed his interest to Edward Price, who was then in possession of the premises under the sale on foreclosure in *Price* v. *Scudder*; but, at all events, Waddell, as assignee, was absolutely divested of all interest in or control of the property, and absolutely divested of the right to sell the same a second time. This being so, it is not necessary to determine whether the second sale, in 1869, was or was not produced by fraud practiced upon the court.

A further consideration is that the only interest Waddell ever had in the premises was as the assignee of Williams in bankruptcy, and that, independently of the sale of 1846, that interest, under the authorities cited by respondents' counsel, before the time of the attempted sale in 1869, may be deemed to have reverted to the bankrupt or his heirs; the purposes for which the assignment had been created having expired, the bankrupt having been duly discharged in 1843, and no debts having been proved against his estate prior to 1869. The alleged debt advanced by Yard, the receiver, in 1869, was barred by the statute of limitations, and, being so barred, the assignee could not, for his own purposes, create a liability of the estate where none existed.

The proceedings in the superior court and in the United States district court,

brought by plaintiff to bolster up the alleged title which came through Waddell as assignee, do not bind the defendants in this action, because they were not made parties to the proceedings.

It having been sufficiently shown that the plaintiff could not, at the trial, succeed upon the strength of her record title, it remains to be seen whether she established a right to possession superior to that of the defendants. It was shown that in 1875 the plaintiff caused a board fence to be built around the premises. But it was also shown that the fence disappeared about one year thereafter. The effect of the building of this fence was fully considered by the court of appeals in *Landon* v. *Townshend*, (N. Y. App.) 29 N. E. Rep. 71, and the decision was adverse to the plaintiff now here. It was further shown that in 1878 the plaintiff repaired the curb and gutter stones in front of the premises. As this involved not even an entry, it is not evidence of adverse possession. And, finally, it is claimed that in 1883 the plaintiff leased the whole plot, consisting of the premises in suit and the Landon property, to one Wieck, who occupied the lot in suit for about four years. The lease was never recorded, and it was not shown that the defendants ever had any notice of it; but it was shown by one of plaintiff's own witnesses that Wieck's retirement from the possession of the premises was peaceable, and that he disclaimed any right to occupy the premises as against the defendants.' Upon the whole case, the plaintiff wholly failed to establish title in herself by adverse possession, or any right to possession superior to that of the defendants.

There is still another aspect of the case. The defendants are in possession, and have, at least, the rights of mortgagees in possession. Upon the sale under the first foreclosure of *Price* v. *Scudder* the premises were bought by Edward Price, who immediately entered into possession. Though the foreclosure was defective, the mortgage was good, and Price became, at least, a mortgagee in possession. He was expressly authorized by the terms of the mortgage to take possession on default, and the presumption is warranted that he went into possession with the consent of the mortgagor. That he continued in possession until June 26, 1855, the date of his death, is admitted in the brief of the attorney for the appellant. The defendants, claiming under Edward Price by mesne conveyances, became subrogated to the rights of Price as mortgagee in possession. The master's deed on foreclosure passed to the purchaser the mortgagee's right to the debt and the mortgage security, and the defendants are entitled to all the rights of Edward Price in the premises, as well by virtue of his possession as mortgagee as by virtue of the conveyance from the master. For these reasons ejectment will not lie against the defendants. The remedy of the plaintiff was in equity.

The exceptions taken by the plaintiff in the course of the trial require no specific discussion, because they do not affect the final result. In every aspect, therefore, that can be taken of the case as made by the plaintiff, the complaint was properly dismissed. The judgment appealed from should be affirmed, with costs. All concur.